IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

FILED
NOV 10 2005
IN THIS OFFICE
Clerk U. S. District Court
Greensboro, N. C.
By _____

| | |
|---|---|
| APPLIED POLYMERICS, INC.<br>Plaintiff,<br><br>v.<br><br>URETEK, USA, INC. and URETEK WORLDWIDE OY<br>Defendants. | CIVIL ACTION NO.: _____<br><br>COMPLAINT<br><br>**1:05CV00985** |

Plaintiff, Applied Polymerics, Inc (hereinafter "Applied") complaining of Defendants alleges and says as follows:

1. Plaintiff is a corporation organized and existing under the laws of the State of North Carolina, with an office and principal place of business in Mt. Airy, North Carolina, within this District.

2. On information and belief, Defendant Uretek USA, Inc. ("Uretek USA") is a corporation organized and existing under the laws of some State other than the State of North Carolina, but in fact conducting business throughout the United States, including within the Middle District of North Carolina.

3. On information and belief, Defendant Uretek Worldwide Oy ("Uretek Worldwide") is a foreign corporation, which in fact does business within the United States, including within the Middle District of North Carolina.

### BASIS OF JURISDICTION OF THIS COURT

4. Each of the Defendants in this action conducts business within the State of North Carolina. The actions alleged herein arise out of the activities of Defendants within the State of North Carolina.

5. Jurisdiction is proper in this Court under 28 U.S.C. §1331, 28 U.S.C. §1338, 28 U.S.C. 2201, and 35 U.S.C. §281, because several of the claims set forth herein arise out of the United States Patent Code and therefore under federal law. The North Carolina State law causes of action asserted herein are pendent to the federal actions and are, therefore, proper within the jurisdiction of this Court.

## FACTUAL BACKGROUND

6. Among other business activities, Applied Polymerics ("Applied") is a contractor involved in the repair and maintenance of load bearing structural surfaces, including road and highway pavement, parking lots, runways, taxiways, foundations, and the like. A substantial portion of Applied's business derives from contracts with the North Carolina Department of Transportation ("DOT"). Applied has in the past, and until very recently, been under contract with DOT under a statewide pavement contract for repairs for asphalt and concrete roads.

7. Under the DOT's procurement process, a party interested in contracting with the DOT submits a proposal setting forth the terms under which they are willing to undertake such work. If the proposal is acceptable, the contractor is so notified and the various local units of the DOT are authorized to utilize the contractor under a statewide contract to repair identified damaged portions of highways.

8. A frequent problem in damaged highways, and one which gives rise to a substantial amount of work received by Applied for the State of North Carolina, involves the sinking or collapse of a portion of the highway because of voids or gaps in the soil or subsidence in the soil, underneath it. In those circumstances, the standard method of repair

in the industry is to inject an expandable substance, usually a foamable polyurethane composition or other chemically expandable composition, into the soil below the highway surface and thereby causing through expansion of the polyurethane or other expandable composition, filling the gaps and leveling of the structure. This methodology has been well known for many years and is the standard within the industry and is not subject to any valid patent or other proprietary rights held by any entity.

9. The roadwork in question under the DOT contracts can be accomplished through a number of methods of work and sources of supply, and without the use of any proprietary materials or methods of work

10. For many years, up to and including the spring of 2005, Applied had a business and licensing relationship with Defendant Uretek USA, Inc. whereby Plaintiff bought materials from that Defendant and utilized that in the course of its road repair work. Plaintiff received some information and technical data on Defendants' materials, but was never restricted or restrained by any non-competition or confidentiality obligations. In fact, Defendants took no steps to protect information, its materials, or any methodology of repair and make no claim of trade secrets of protected rights. The business relationship no longer exists, and Plaintiff has obtained other sources of material supply.

11. Since ceasing to contract with Defendant Uretek USA, Plaintiff continued to work with the DOT until approximately late September of 2005, at which time Plaintiff was informed by agents of the DOT that Defendant Uretek USA, Inc. had alleged that Plaintiff was violating patents held by Uretek. The DOT has refused to continue to refer work to Plaintiff because of this allegation.

BTCM:302430 v1

12. On information and belief, Uretek has undertaken a scheme and pattern of misinformation, falsely alleging to the DOT, and perhaps others, that Plaintiff's methods of doing work infringe patent rights held by or within the control of Uretek USA.

13. But for the misinformation promulgated by Defendant, the DOT would be continuing to refer substantial and profitable work to Plaintiff. However, because of the uncertainty created by the threats and statements made by Defendant, such work has not been referred, and will not be referred until the resolution of these issues.

## DEFENDANTS' PURPORTED PATENT

14. On information and belief, the patent rights to which Defendant Uretek USA has referred in its representations to the DOT is United States Patent Number 6,634,831 (hereinafter, the "'831 Patent", or simply, the "Patent"). A true copy of the '831 Patent is attached hereto as **Exhibit A**.

15. On information and belief, Defendant Uretek USA holds United States licensing rights to any patent rights owned by Defendant Uretek Worldwide under the '831 patent. In the course of obtaining the '831 Patent, Defendant Uretek Worldwide Uretek USA and Uretek Worldwide being sometimes hereinafter referred to collectively as "Uretek", specifically disavowed any claim under the Patent to exclusive rights to leveling structures in that Uretek Worldwide stated to the United States Patent and Trademark Office, the "USPTO" in an attempt to overcome prior art cited by the USPTO as a basis for rejection of the Uretek Worldwide Patent claims, that its claimed invention related to improvement of the bearing capacity of the foundation soil <u>and not</u> to leveling a structure (Uretek Worldwide

response to USPTO rejection in Uretek Worldwide responses of 03/16/01, 09/27/01, 01/23/02, 04/17/02 and 11/07/02).

16. On information and belief, Uretek USA and Uretek Worldwide are affiliated and share a common operating structure and business plan.

17. In the course of prosecuting its Patent application, Defendant Uretek Worldwide specifically disavowed any rights or claim to invention of a restorative product, but rather sought to protect its alleged method of "improving the bearing capacity of the foundation soil".

18. Further, in the course of prosecuting its Patent application, Defendant Uretek Worldwide in submitting prior art to the USPTO as required appears to have misrepresented the state and meaning of some of such prior art, to the Patent Office. Specifically and without limitation, Defendant submitted as prior art through translation, of some of its own previous disclosures which were in Italian that would have by law if properly submitted, represented a bar to patentability of the '831 Patent. Defendant, as part of these submissions, submitted translations of portions, but not all, of the documents, highlighting only those portions which supported Uretek's claim, and specifically ignoring those elements which would likely have barred allowance of its claims before the Patent Office.

19. On information and belief, Uretek USA is a licensee of any rights owned by Uretek Worldwide in the '831 Patent.

20. Plaintiff's current method of doing work does not involve or infringe upon the methodology set forth in the '831 Patent.

21. Notwithstanding the fact that Plaintiff is not infringing any Patent rights of Uretek Worldwide, if any, Defendants continue to argue to the State of North Carolina DOT

that Plaintiff is infringing, not only in its road repair contract, but on all contracts between Plaintiff and the State of North Carolina. As a result, the DOT, in order to avoid becoming involved in the dispute and in reliance on Defendants' false statements, has suspended all work to Plaintiff.

22. Plaintiff is at present unaware of whether Defendants are making similar false representations to other current and potential customers of Plaintiff. If so, such false representations threaten to wrongfully damage Plaintiff's reputation in the industry and to interfere with Plaintiff's ability to consummate contracts which would be of economic advantage to it.

**FIRST CAUSE OF ACTION:
DECLARATORY JUDGMENT OF INVALIDITY FOR OBVIOUSNESS**

23. The allegations contained in the foregoing paragraphs are re-alleged and incorporated as if fully set forth.

24. Defendant Uretek Worldwide's alleged invention was in fact made fully obvious by prior art, and Uretek Worldwide's application revealed no patentable invention, pursuant to 35 U.S.C. §103.

25. Uretek Worldwide's '831 Patent is in fact invalid for obviousness under 35 U.S.C. ¶ 103, and Plaintiff is entitled to a Declaratory Judgment so ruling.

## SECOND CAUSE OF ACTION
## DECLARATORY JUDGMENT OF INVALIDITY FOR ANTICIPATION

26. The allegations contained in the foregoing paragraphs are re-alleged and incorporated as if fully set forth.

27. Defendants claimed invention as set forth in the '831 Patent has been fully disclosed by prior art, is invalid under 35 U.S.C. §102 as being so disclosed by prior art.

28. Plaintiff is entitled to a Declaratory Judgment ruling Defendants' '831 Patent invalid by virtue of having been disclosed by prior art, and confirming that Plaintiffs actions do not violate any valid Patent held by Plaintiff.

## THIRD CAUSE OF ACTION
## DECLARATORY JUDGMENT OF INVALIDITY
## FOR INEQUITABLE CONDUCT/FRAUD ON THE PATENT OFFICE

29. The allegations contained in the foregoing paragraphs are re-alleged and incorporated as if fully set forth.

30. On information and belief, in the course of prosecuting its application which matured to the '831 Patent, before the USPTO, Defendant affirmatively misrepresented the state of prior art and/or deliberately omitted to provide material facts to the Patent office relevant to the determination on the validity of its patent application from which the '831 Patent matured.

31. The omitted and/or misrepresented information was material to the USPTO's determination of patentability.

32. But for the omissions and/or misrepresentations I, Defendant, the '831 Patent purportedly held by Defendant would not have issued.

33. Defendants claimed invention as set forth in the '831 Patent, is invalid because Defendants' submissions to the Patent Office constituted inequitable conduct, and/or on the Patent Office.

## FOURTH CAUSE OF ACTION:
## DECLARATORY JUDGMENT OF NONINFRINGEMENT

34. The allegations contained in the foregoing paragraphs are re-alleged and incorporated as if fully set forth.

35. Alternatively to the First, Second, and Third Causes of Action, to the extent that the Court finds that Defendants hold any valid patent rights, Plaintiff's methodology of road repair does not infringe upon any valid patent rights of Defendants.

36. Plaintiff is entitled to a Declaratory Judgment of noninfringement confirming the legality of its actions.

## FIFTH CAUSE OF ACTION:
## INTERFERENCE WITH CONTRACT/INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

37. The allegations contained in the foregoing paragraphs are re-alleged and incorporated as if fully set forth.

38. Defendants' actions as set forth above constitute an interference with Plaintiff's contractual relations with the DOT and with Plaintiff's perspective economic advantage in the form of contracts which the State of North Carolina, and perhaps others would award but for Defendants' actions.

39. Defendants' actions have been knowingly undertaken, and are without justification.

40. Plaintiff has suffered substantial damages, in an amount to be proved at trial, but expected to be in excess of $150,000, as a result of Defendants' actions.

## SIXTH CAUSE OF ACTION:
## UNFAIR AND DECEPTIVE TRADE PRACTICE

41. The allegations contained in the foregoing paragraphs are re-alleged and incorporated as if fully set forth.

42. Defendants' actions as set forth above are in or affecting commerce.

43. Defendants' actions are unfair, unscrupulous and likely to deceive the consuming public, including the DOT.

44. Plaintiff has been damaged by Defendants' actions in an amount to be proved at trial, but expected to be in excess of $150,000.

45. Defendants' actions violate North Carolina General Statutes Chapter 75 and constitute Unfair and Deceptive Trade Practices within the meaning of that Chapter.

46. Plaintiff has demanded that Defendants cease and desist misleading the NC DOT, and to correct any incorrect statements already made, but Defendants have refused to do so.

47. Plaintiff is entitled to its damages, trebled under North Carolina General Statutes Chapter 75, as well as attorneys' fees thereunder.

WHEREFORE, Plaintiff prays the Court as follows:

1. Enter Declaratory Judgment finding that the '831 Patent is invalid for lack of novelty, obviousness, fraud upon the USPTO and/or inequitable conduct.

BTCM:302430 v1

2.  Alternatively, enter a Declaratory Judgment finding that Plaintiff's methods of work do not infringe upon any valid patent rights of Defendants.

3.  Award damages to Plaintiff in an amount to be proved at trial representing the damages caused by Defendants' Interference with Contract and Unfair and Deceptive Trade Practices.

4.  Treble Plaintiff's damages pursuant to North Carolina General Statutes Chapter 75.

5.  Award Plaintiff its attorneys' fees pursuant to North Carolina General Statutes Chapter 75.

6.  Determine this case to be extraordinary and award exemplary damages and attorneys' fees under the United States Patent Act, 35 U.S.C. 285.

This the 9TH day of November, 2005.

---
Peter J. Juran
NC State Bar No. 13566
*Attorney for Plaintiff*

---
Jeffrey D. Patton
N.C. State Bar No. 21246
*Attorney for Plaintiff*

**OF COUNSEL:**
BLANCO TACKABERY COMBS
& MATAMOROS, P.A.
P.O. Drawer 25008-5008
Winston-Salem, NC 27114
Telephone: (336) 293-9000
Facsimile: (336) 293-9030

BTCM:302430 v1